IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT J. CARNS,** | ) |
|     Plaintiff, | ) |
| | ) |
|   v. | ) Civil Action No. 05-0646 |
| | ) |
| **JO ANNE B. BARNHART,** | ) **Electronically Filed** |
| Commissioner of Social Security, | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION**

**November 3, 2005**

    **I.**    **Introduction**

Plaintiff Robert J. Carns brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("Act"), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under title II of the Act.  Consistent with the customary practice in the Western District of Pennsylvania, the parties have submitted cross motions for summary judgment and the record developed at the administrative proceedings.

After careful consideration of the Administrative Law Judge's ("ALJ's") Decision, the memoranda of the parties, and the entire record, the Court finds that the ALJ relied on an improper interpretation of the physical exertional requirements of light work.  Accordingly, this Court cannot determine whether there is substantial evidence to support the ALJ's decision.  The Court therefore denies the Commissioner's motion for summary judgment, grants in part plaintiff's motion for summary judgment, and remands for further proceedings consistent with this opinion.

1

## II.      Procedural History

Plaintiff filed an application for DIB on September 30, 2003, claiming disability as a result of low back and left leg pain.  R.58.  Plaintiff, who alleges that his back pain began in February 2003, suffers from lumbar disc disease and cervical disc disease.  R.13.  This claim was denied initially on March 2, 2004.  After his claim was denied at the administrative level, plaintiff requested a hearing.  On December 10, 2004, a hearing was held before the ALJ Douglas Abruzzo, at which plaintiff testified, as did a vocational expert.

On January 25, 2005, the ALJ found that plaintiff had lumbar and cervical disc diseases that are severe based on 20 C.F.R. § 404.1520©), but these impairments are not so severe as to meet or medically equal any of the listed impairments under 20 C.F.R. Appendix 1, Subpt. P, Regulation No. 4.  R.18.  Further, the ALJ found that although plaintiff cannot perform his previous medium to heavy maintenance work, he is still capable of performing light work.  R.16, 18.  As a result of these findings, the ALJ concluded that plaintiff was not under a disability, as defined in the Social Security Act, at any time through the date of the decision.  R.19.

Plaintiff sought review of the ALJ's decision and, on March 8, 2005, the Appeals Council denied his request for review.  Plaintiff timely commenced this action, which is now before this Court on the cross motions for summary judgment, under Rule 56 of the Federal Rules of Civil Procedure.

### III. Statement of the Case

### A. Factual Background

At the time of the ALJ's decision, plaintiff was a 51-year-old male with a high school education. R.13. Plaintiff previously worked as a maintenance worker until May 2002. R.64. Plaintiff alleges that he could not work since February 2003 due to back and leg problems. R.60. Plaintiff commenced treatment for his lower back condition in December 2001 at Latrobe Area Hospital Primary Care. R.178. Dr. Cook subsequently treated plaintiff in May 2002. R.185. Dr. Cook referred plaintiff to undergo physical therapy, which was unsuccessful. R.186-212. As a result, Dr. Cook referred plaintiff to Dr. Kozakiewicz who found plaintiff's symptoms to be consistent with a left S1 radiculitis. R.163.

Plaintiff received some benefit from his treatment with Dr. Kozakiewicz, including a steroid injection. R.156, 157. Plaintiff returned to work, but was injured while lifting an air conditioner and stopped working again. R.156. Dr. Kozakiewicz told plaintiff to remain off work. R.156. Dr. Kozakiewicz, a treating source, continued to treat plaintiff until May 2004. R.172. After numerous tests and two trigger point injections, Dr. Kozakiewicz released plaintiff to return to full-time light duty work. R.173. Dr. Kozakiewicz submitted a report detailing the history of plaintiff's back problems. R.274-276. Dr. Kozakiewicz opined that the symptoms and test results remained consistent with chronic left S1 radiculitis through May 2004. R.275. In response to a request for clarification, Dr. Kozakiewicz noted that plaintiff was medically limited to occasionally lifting ten pounds and working primarily from a seated position. R.276.

In December 2003, Dr. Searfoss performed a consultative examination at the request of

the Social Security Administration ("SSA"). R.164-168. Dr. Searfoss opined that plaintiff was capable of lifting ten pounds and 25 pounds occasionally. R.168. Dr. Searfoss further declared that plaintiff is capable of performing a wide-range of light work. *Id*.

Irene Montgomery, a vocational expert (VE), provided expert testimony at the hearing. R.312-319. The ALJ asked the VE to describe the work available to a hypothetical individual who was exertionally limited to the range of light work. R.314. The VE advised that the individual could perform a significant number of jobs in the national economy. R.315.

**B.   The ALJ's Findings**

The ALJ made the following specific findings:

1. The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act, as amended, and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of his disability.

3. The claimant has the following medically determinable "severe" impairments: lumbar disc disease, with radiculopathy, and cervical disc disease (20 CFR § 404.1520©)).

4. These medically determinable impairments do not meet or medically equal any of the listed impairments in Listing 1.00 Musculoskeletal System, or any other impairment listed in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments.

6. The undersigned finds the claimant's allegations regarding his limitations not totally credible for the reasons set forth in the body of this decision.

7. The claimant has the residual functional capacity to engage in a range of light work that involves occasional stooping, kneeling, crouching, crawling or climbing of ramps or stairs; avoids balancing, crawling or climbing of ladders, ropes or scaffolds; affords a sit/stand option that permits the claimant to take four or five

>   steps within a one minute period up to overhead reaching, or pushing and/or pulling with the upper extremities; avoids even moderate exposure to cold temperature extremes and does not require more than occasional prolonged reading for content or comprehension.
>
> 8. The claimant is unable to perform any of his past relevant work and does not have any skills that could be transferred to other types of work within his residual functional capacity (20 CFR § 404.1565).
>
> 9. The claimant was born on February 23, 1953 and was 50 years of age on February 23, 2003. This is defined as closely approaching advanced age (20 CFR § 404.1563).
>
> 10. The claimant has a high school education (20 CFR § 404.1564).
>
> 11. Although the claimant's limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.14 in Appendix 2, Subpart P, Regulation No. 4 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include light work as a weigher, with 240 jobs available locally, 3650 in the state and 87,729 in the nation; a cashier/toll collector, with 4990 jobs available locally, 95,000 in the state and 182,617 in the nation; or a fabricator, with 4410 jobs available locally, 23,675 in the state and 105,948 in the nation. Sedentary work would include jobs as an assembler, with 100 jobs available locally, 900 in the state and 51,546 in the nation; a table worker, with 440 jobs available locally, 2850 in the state and 43,992 in the nation; or an addresser, with 200 jobs available locally, 1460 in the state and 46,898 in the nation.
>
> 12. The claimant was not under a "disability," as defined in the Social Security Act, as amended, at any time through the date of this decision (20 CFR § 404.1520(g)).

R. 18–19.

**IV.    Standards of Review**

Judicial review of the Commissioner's final decisions on disability claims is provided by 42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2]. Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based. Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), disability decisions rendered under Title II are pertinent and applicable to those rendered under Title XVI. *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990).

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995); *Wallace v.*

---

[1] Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .

42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

*Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Ventura*, 55 F.3d at 901 *quoting Richardson*; *Stunkard v. Secretary of the Dep't of Health and Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the ALJ's decision by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to

consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence, especially when testimony of the claimant's treating physician is rejected. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician: "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports" and other objective medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

To demonstrate disability under Title II or Title XVI of the Act, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 423 (d)(1); 42 U.S.C. § 1383c(a)(3)(A). When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The United States Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999) as follows:

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520©). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.
> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .
> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (emphasis added; certain citations omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, she will be deemed disabled where she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461, *citing* 42 U.S.C. § 423 (d)(2)(A). In order to prove disability under this second method, plaintiff first must demonstrate the existence of a medically determinable disability that precludes her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that she is unable to resume her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v.*

*Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the '[Commissioner] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(B), and 20 C.F.R. § § 404.1523, 416.923.

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523 (2002), Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Thus, when a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the [Commissioner] denies the payment of disability benefits." *Bittel,* 441 F.2d at 1195. Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a Listed Impairment. 20 C.F.R. § 404.1520(d) (2002). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a Listed Impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the Listed Impairments. *Fargnoli,* 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful

11

activities, it is incumbent upon the ALJ to "secure whatever evidence [he or she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d at 36.

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65 (3d Cir. 1987), *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This evaluation obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529©) (2002). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. The United States Court of Appeals for the Third Circuit has stated: "[I]n all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set

forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433, *quoting* Social Security Ruling ("SSR") 95-5p.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. While "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain *without contrary medical evidence. Ferguson*, 765 F.2d at 37; *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

### V.  Discussion

In his brief in support of his motion for summary judgment, plaintiff raises the following challenges to the ALJ's determination: 1) the ALJ credited the opinions of Dr. Kozakiewicz, but departed from this opinion when formulating his RFC; and 2) the ALJ failed to properly weigh competent medical evidence and opinions submitted by the treating physician.

The ALJ found that plaintiff was limited to light duty work. In support thereof, the ALJ afforded great weight to the opinion of plaintiff's treating physician, Dr. Kozakiewicz. The ALJ noted:

> Dr. Kozakiewicz states that the claimant retains the ability to perform a range of full time light work that involves lifting and/or carrying no more than ten pounds and can be primarily performed in a seated position. He does not find that 'work duties that require standing, walking, bending, twisting, etc., of any significance' are appropriate. This opinion was given great consideration because Dr. Kozakiewicz is a treating physician and his opinion is supported in large part by his treatment notes and the objective evidence of record.

R.15.

After stating that this opinion was to be treated with great weight, the ALJ stated that light work involves lifting and/or carrying no more than 10 pounds frequently or 20 pounds occasionally. R.16. He also noted that light work requires standing or walking for up to six hours a day. *Id*. Although these are both accurate assessments of the requirements for light work as defined by the SSA and the Dictionary of Occupational Titles ("DOT"), they conflict with the exertional requirements noted by Dr. Kozakiewicz. 20 C.F.R. § 404.1567(b) (2005). Dr. Kozakiewicz's statement is self-contradictory and cannot be explained unless he misunderstood the requirements for light work. Perhaps Dr. Kozakiewicz intended a layman's definition of light work and was not referring to a specific category of work as defined by the SSA. Either way, Dr. Kozakiewicz stated that plaintiff was incapable of lifting more than ten pounds. Since the ALJ stated that he gave great weight to the opinions of treating physician Dr. Kozakiewicz, this Court cannot reconcile that finding with the ALJ's conclusion that plaintiff was capable of lifting 20 pounds.

Not only did the ALJ rely on this conflicting opinion, the ALJ asked the VE how many

14

jobs are available for a hypothetical person restricted to the light exertional category. R.314. As was proper, the VE understood the scenario to involve someone who could occasionally lift 20 pounds, as proscribed by the DOT. This RFC clearly conflicts with the opinion of Dr. Kozakiewicz, which the ALJ gave great weight, that plaintiff was limited to lifting ten pounds, and thus, was only capable of performing sedentary work.

With the confusion that exists between the opinions which the ALJ credited and the finding that he was able to perform light work, the Court cannot determine what evidence the ALJ relied on to conclude that plaintiff could lift 20 pounds. Therefore, the Court will remand this case for the ALJ to clarify whether plaintiff has an RFC to perform light duty work despite the opinion of Dr. Kozakiewicz (to which the ALJ gave great weight) that plaintiff was not capable of lifting more than ten pounds.[3]

### VI.     Conclusion

The Court has reviewed the ALJ's findings and decision, this Court cannot determine whether there is substantial evidence to support the ALJ's decision. Accordingly, this Court will deny the Commissioner's motion for summary judgment, grant in part plaintiff's motion for summary judgment, and remand for further proceedings consistent with this opinion.

An appropriate order will follow.

s/Arthur J. Schwab<br>
Arthur J. Schwab<br>
United States District Judge

---

[3] In light of this Court's decision to remand this case, this Court will not address plaintiff's second argument that the ALJ failed to properly weigh the evidence submitted by his treating physician.

cc:

James C. Ward, Esquire
Woomer & Friday
3220 West Liberty Avenue
Suite 200
Pittsburgh, PA 15216

Paul Skirtich, Esquire
United States Attorney's Office
700 Grant Street
Suite 400
Pittsburgh, PA 15219